FRANK LATTA, Appellant, v. OLSON & LONGMAN et al., Appellees.

PARTNERSHIP: Liability of Partnership—Execution—Firm Property—Sufficiency of Evidence. On execution under a judgment solely against a partnership, where it was claimed that property levied on was the individual property of one of the partners, held that the evidence was insufficient to support the finding that the property was individual property.

*Appeal from Harrison District Court.*—J. B. ROCKAFELLOW, Judge.

MAY 15, 1919.

REHEARING DENIED DECEMBER 19, 1919.

THIS is a suit on account for $1,100, had and received. The sole defendant is the copartnership firm of Olson & Longman. The members of this copartnership were Herman Olson and A. M. Longman. Neither of such members is a party defendant, the suit being against the firm alone. An attachment was sued out on July 24, 1917, and the same was levied upon two certain automobiles, as the alleged property of the firm. On the same day, Longman executed a bill of sale, covering the same property, to the intervener, who has filed a petition of intervention, claiming the property under its bill of sale, as the individual property of Longman. The one question in issue, therefore, is whether the attached property was the property of the firm, or was it the individual property of Longman? The

case was tried summarily before the trial court, without a jury, under the provisions of Code Section 3928. The trial court found for the intervener. The question before us is whether this finding is fairly supported by the evidence.— *Reversed.*

*Roadifer & Roadifer,* for appellant.

*J. A. Murray,* for appellee.

Evans, J.—For some years prior to the date of the attachment, Olson & Longman had been engaged in the automobile business at Logan, Iowa. Olson took charge of the mechanical and repair department, and Longman took care of the "front end." The firm was organized without capital. The business of the firm consisted of buying and selling automobiles and making automobile repairs. By agreement, each partner drew out $50 a month for living expenses. Shortly before the date of the attachment, the firm sold out the repair department. It was thereupon agreed between the members that Olson's compensation from the firm should cease, and that he should go to Omaha, to seek other work. As to Longman, it was agreed, according to his testimony, "that I was to stay at Logan, and conduct the business until I could dispose of it." It was also agreed that his monthly compensation was to be continued. No formal dissolution of the firm was attempted at that or any later time. The firm owed, at that time, $2,000 or $3,000 at the bank for borrowed money, and $1,100 to the plaintiff, being money advanced in the purchase of an automobile, which was not delivered. Assets of substantial value were owned by the firm, and contained in its place of business. On the date of the attachment, this place of business contained automobile accessories to the value of $1,200 or $1,300, which are conceded to have been the property of the firm. It contained, also, a new Chalmers au-

tomobile and a rebuilt Ford automobile. The attachment was levied upon these two cars. These are the property in controversy. Each of these was acquired after Olson had gone to Omaha. The circumstances of the acquisition of the Ford car were that Longman bought from one Beebee a Ford chassis and an engine block for $100. To this foundation he added the necessary parts, including four wheels. He paid Beebee by a firm check of $100. The four wheels used by him were taken from the stock of the firm. The same was true of other parts. Some necessary parts which were not in the firm stock were ordered in the name of the firm and shipped accordingly. What was done in the building up of this Ford car was precisely what had been done by the firm in several previous instances. Such rebuilding was a part of the firm business. The only explanation made by Longman of these significant circumstances is that the firm was indebted to him, and that he charged himself upon the books of the firm with the $100 thus used. Upon a reading of the entire record, we are united in the conclusion that the record does not fairly support the finding that the Ford automobile was not firm property.

The Chalmers car was purchased a few days before the levy. The firm had a Chalmers agency, and had had the same for some time. In settlement for the car, Longman gave a check for $300 and a note for $830. He, in company with Olson, drove the car from Omaha to Logan, and placed the same in the firm's place of business. The firm had a dealer's license. Longman attached to the car the firm's dealer's number. Such dealer's number continued upon the car up to the time of the attachment. As against these circumstances, Longman testified that he paid for the car with his own check for $300 on the intervener bank, and with his own note for $830. This testimony was severely shaken by other circumstances. Longman had no in-

dividual account at the bank at that time, nor was there any charge for the payment of such check ever made against him by the bank. The explanation of this fact is that the bank carried the check as a cash item, rather than to charge it as an overdraft. Though the check and note must have been in existence and in force at the time this controversy was precipitated, neither Longman nor the intervener was able to produce in evidence either the check or the note. Moreover, the $830 note was paid by Longman by turning in the firm's stock of accessories. This substantial act on the part of Longman was wholly inconsistent with his testimony. While this inconsistency is not chargeable to the intervener, it is quite destructive of the testimony of Longman at this point.

It is urged in argument that the only business that Longman had to do for the firm was to sell out the stock on hand, and not to buy, and that Longman was, therefore, justifiably preparing to go into business on his own account. But he testified that:

"It was agreed that I was to stay at Logan and conduct the business until I could dispose of it."

Manifestly, a going business might be disposed of to better advantage than to reduce the stock to a low point, and to lose the remnant. He was, in fact, buying supplies in the firm name up to within a few days prior to the attachment. Still more significant was the fact that, on July 19th, he had enlisted in the military service. This course had been in contemplation by him for some time, and it had been arranged between him and Olson that, in such event, Olson was to return to Logan, to close up the business. We do not overlook the fact that, at the time the Chalmers car was purchased, Longman claims to have taken out a new agency for himself alone. No corroboration is offered of this evidence by the production of documents. Upon the record as a whole, we reach the conclu-

sion that, at this point also, the overwhelming weight of the evidence is against the finding in favor of the inter-vener. For the reasons indicated, the judgment below is—
*Reversed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.